UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

MICHAEL GARDNER, BAYTREE CAPITAL :
ASSOCIATES, LLC, TREELINE INVESTMENT :
PARTNERS, LLP, SEAN DESON, DAVID :
JAROSLOWICZ and GENE ROSENFELD, :
Derivatively and on Behalf of SecureLogic Corp., :
 :  Civil No. 07cv645(MGC)(THK)
    Plaintiffs, :
 :
   v. :
 :
GARY KOREN, SHALOM DOLEV, :
CATHAL L. FLYNN, IFTACH YEFFET, :
TONY GROSS AND MICHAEL KLEIN, :
 :
    Defendants, :
 :
   - and - :
 :
SecureLogic Corp., :
 :
    Nominal Defendant. :
-------------------------------------------------------------X

**AMENDED VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

## **NATURE OF THE ACTION**

1.      This is a stockholder derivative action brought by plaintiffs Michael Gardner ("Gardner"),  Baytree Capital Associates. LLC ("Baytree"), Treeline Investment Partners, LLP ("Treeline"), Sean Deson ("Deson"), David Jaroslowicz ("Jaroslowicz") and Gene Rosenfeld ("Rosenfeld") (collectively "Plaintiffs"), by their counsel, the Law Offices of G. Oliver Koppell & Associates and Gersten Savage, LLP, on behalf of Defendant SecureLogic Corp. ("SecureLogic" or the "Company") against the following officers and directors of the Company: Gary Koren ("Koren"), Shalom Dolev ("Dolev"), Cathal L. Flynn ("Flynn"), Iftach Yeffet ("Yeffet"), Tony Gross ("Gross"), and Michael Klein ("Klein")(collectively "Defendants").

2.      Collectively plaintiffs are now, and at all times relevant have been, the beneficial owner of more than 10% of the outstanding common stock of SecureLogic. Plaintiffs, derivatively and on behalf of SecureLogic, seek relief for the damages sustained, for the damages the Company continues to sustain and for those damages to be sustained by the Company, as a result of the Defendants' violations of law, including their breaches of fiduciary duties, abuse of control, self-dealing, gross mismanagement, waste of corporate assets and unjust enrichment, which occurred between December 2004 and the present (the "Relevant Period").

3.      The Defendants' improper conduct giving rise to this action relates to the Defendants' collective refusal to adhere to directives issued by the Company's Board of Directors (the "Board"), their egregious waste of corporate assets and their repeated instances of gross corporate mismanagement.

4.      On or about September 21, 2006, Gardner, pursuant to Securities and Exchange Commission Rule 13d (17 CFR Sect. 240), advised the Company that the aforesaid course of conduct was leading the Company toward financial oblivion and demanded immediate changes in SecureLogic's governance in order to enhance the chances of the Company's survival.

5.      To date, the Defendants continue their refusal to adhere to Board directives, continue to waste corporate assets and continue engaging in gross corporate mismanagement.

6.      In light of these events, this action, on behalf of the Company, seeks to remedy the harms caused to SecureLogic by the Defendants and, in addition, to strip each of the Defendants of their executive or management duties and appoint a receiver to manage the affairs of the Company.

7.      The Defendants owed SecureLogic duties of care, undivided loyalty, good faith, and truthful disclosure.   The Defendants breached these duties by enriching themselves at the expense of the Company's assets and all prior attempts to address the Defendants' collective mismanagement, self-dealing and corporate waste have fallen on deaf ears.

8.      By virtue of Defendants misfeasance, malfeasance, nonfeasance, fraud and collusion, the Company is unable to conduct its business or conserve its assets and is in danger of insolvency.

## JURISDICTION AND VENUE

9.      Jurisdiction and venue in this Court is proper based upon 28 U.S.C. § 1332(a).  This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims pursuant to 28 U.S.C. § 1367.

10.     This Court posses personal jurisdiction over each Defendant based on each Defendant's residence, presence, transaction of business and contacts within the United States, New York and this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(a) and (c).

## THE PARTIES

### The Plaintiffs

12.     Gardner is an individual residing in the State of New York who is the beneficial owner of approximately 3.5% of the outstanding common stock of SecureLogic.

13.     Baytree Capital Associates is a Deleware limited liability company located in the State of New York and is a leading private international investment bank which is the beneficial owner of approximately 3% of the outstanding common stock of SecureLogic.  Gardner is the President and CEO of Baytree.

14.     Treeline Investment is a Delaware limited partnership operating as a private investment fund located in the State of New York which is the beneficial owner of approximately 1.5% of the outstanding common stock of the SecureLogic.  Upon information and belief, none of the partners of Treeline are citizens of the states of California, and Nevada, or of Israel.

15. Sean Deson is an individual residing in the State of New York who is the beneficial owner of approximately 1% of the outstanding common stock of SecureLogic. He is a member of the board of directors of the Company.

16. David Jaroslowicz is an individual residing in the State of New York who is the beneficial owner of approximately 1.5% of the outstanding common stock of SecureLogic.

17. Gene Rosenfeld is an individual residing in the State of New York who is the beneficial owner of approximately 1% of the outstanding common stock of SecureLogic.

**The Nominal Defendant**

18. Nominal Defendant SecureLogic is a corporation incorporated in Nevada with its principal United States headquarters in New York, New York during the Relevant Period.

19. Although its mangers are located in Israel, SecureLogic is incorporated in Nevada with its principal place of business in New York located at 40 Wall Street, 58th Floor, New York, New York.  SecureLogic solicits and transacts business within the State of New York and many of the events alleged and complained of herein occurred in this State.

20. Securities and Exchange Commission filings made by SecureLogic pursuant to federal law have all listed 40 Wall Street, 58th Floor, New York, New York as SecureLogic's place of business.  Defendants Koren, Dolev and Flynn as well as other employees and/or agents of SecureLogic were present for dozens of business meetings

that took place at SecureLogic's 40 Wall Street address as recently as June, 2006, and correspondence addressed to SecureLogic is routinely sent to that address.

21.     SecureLogic develops and markets systems that manage the movement of people and baggage through airports and that integrate unique security methodologies with state-of-the-art screening and baggage handling technologies, providing a comprehensive baggage screening and passenger screening security solution.

22.     In 2005, Monterey Bay Tech, Inc. acquired SpaceLogic and its subsidiary SecureLogic, then changed its name to SecureLogic Corp – the plaintiff herein – the stock of which now publicly trades in the United States (OTCBB:SLGI).  Its subsidiary, SecureLogic Inc. handles all marketing and business operations of the Company. SpaceLogic Ltd. is the wholly owned subsidiary of SecureLogic Corp., and conducts the R&D and some non-US activities for the Company.

**The Defendants**

23.     Defendant Koren is SecureLogic's Chairman, President and Chief Executive Officer and he is a member of the Company's Board of Directors and a member of the Company's Board of Directors' improperly constituted "Executive Committee."  Koren resides in the state of Israel.

24.     Defendant Dolev is SecureLogic's Vice President of Security Systems and is a member of the Company's Board of Directors and a member of the Company's Board of Directors' improperly constituted "Executive Committee."  Dolev resides in the state of Israel.

25.     Defendant Flynn (a/k/a "Irish") has been a retained consultant to SecureLogic since 2003 and is a member of the Company's Board of Directors.  Flynn is a resident of the state of California.

26.     Defendant Yeffet was SecureLogic's Chief Financial Officer during the Relevant Period and is currently the Company's Chief Operating Officer and a member of the Company's Board of Directors and a member of the Company's Board of Directors' improperly constituted "Executive Committee."  Yeffet resides in the state of Israel.

27.     Defendant Gross is SecureLogic's Head of Research and Development. Gross resides in the state of Israel.

28.     Defendant Klein is SecureLogic's Vice President of Automated Systems and the Head of Sales and Marketing and a member of the Company's Board of Directors and a member of the Company's Board of Directors' improperly constituted "Executive Committee."  Klein resides in the state of Israel.

## SECURELOGIC'S BOARD OF DIRECTORS

29.     SecureLogic's Board of Directors at the time of filing of the original Complaint consisted of a total of five board members; three non-employee Directors - Defendant Flynn and non-parties Sean Deson and Paul Goodman - and two Directors who were employed by the Company during the Relevant Period - Defendants Koren and Dolev.

30.     Deson is a Managing Director of Baytree Capital Associates, LLC with whom SecureLogic entered into a consulting agreement in or about December 2005.

31.     Non-party Director Paul Goodman is an attorney who has provided legal services to the Company since 1999.

32.     At the Board of Directors meeting on or about November 9, 2006, an unlawful resolution was passed expanding the Board of Directors of the Company from five to seven members.  Defendants Klein and Yeffet were added to the Board of Directors by a vote of Defendants Koren, Dolev and Flynn.  This was ratified by these Defendants in a Board of Directors meeting held on or about November 16, 2006.  Deson and Goodman opposed this improper expansion.

33.     On or about November 19, 2006, Defendants Koren, Dolev, Flynn, Klein and Yeffett voted to create an "Executive Committee" of the Board of Directors consisting of Koren, Dolev, Klein and Yeffet.  This Executive Committee was improperly delegated "all the powers of the board of directors…."  Deson and Goodman opposed this improper delegation.

**OBLIGATIONS AND DUTIES OF THE DEFENDANTS**

34.     By reason of their positions as directors, officers and/or fiduciaries of SecureLogic, and because of their ability to control the business, corporate and financial affairs of SecureLogic, each of the Defendants owed the Company the duty to exercise due care and diligence in the management and administration of the affairs of the Company, including in the use and preservation of corporate assets, strict adherence to Board resolutions and the avoidance of corporate mismanagement.  Additionally, each of the Defendants owed the duty of loyalty, including full and candid disclosure of all material facts.  Further, Defendants owed a duty to SecureLogic to ensure that the Company operated in compliance with all applicable federal and state laws, rules and

regulations and that SecureLogic did not engage in any unsafe or unsound business practices. The conduct of Defendants complained of herein involves knowing and culpable violations of their obligations as Directors and Executives of SecureLogic, the absence of good faith on their part, self-dealing, corporate waste and a reckless disregard of their duties to the Company and its shareholders, which Defendants were aware or should have been aware posed a risk of serious injury to SecureLogic.

35.    To properly discharge their duties, the Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial and corporate affairs of SecureLogic. By virtue of this obligation of ordinary care and diligence, Defendants were required, among other things, to:

a.    manage, conduct and direct the employees, businesses and affairs of SecureLogic in accordance with laws, rules and regulations, and the charter and by-laws of the Company;

b.    adhere to Board resolutions;

c.    ensure that executive compensation is not excessive;

d.    disclose and avoid all potential conflicts of interest;

e.    ensure the prudence and soundness of policies and practices undertaken or proposed to be undertaken by SecureLogic;

f.    avoid self-dealing and unjust enrichment;

g.    insure that ultimate control of the Company rest in the properly constituted Board of Directors of the Company; and

h.    rein in unnecessary expenses.

36.   Defendants, in breach of their fiduciary duties, authorized, caused, and/or permitted SecureLogic to:

a.   repeatedly fail to adhere to SecureLogic's Board resolutions;

b.   compensate its executives at rates far in excess of what similarly situated executives receive;

c.   maintain affiliations with another company at the expense of SecureLogic solely to benefit Defendant Koren;

d.   allow Defendants Koren, Dolev and Flynn  to charge the Company with outrageous personal expenses including travel and vehicle leases;

e.   mislead SecureLogic's shareholders about the significant tax implications of a transaction that would have adversely impacted SecureLogic while personally benefiting Defendants Koren, Dolev, Yeffet, Gross and Klein;

f.   improperly re-constituted and expanded the Board of Directors from five to seven members;

g.   improperly created and empowered an Executive Committee to wrest control of the business of the Company from the Board of Directors;

h.   improperly indemnify the Defendants' legal fees and damages incurred and to be incurred from this lawsuit; and

        i.      improperly indemnify Koren in a lawsuit brought against him by shareholders of SecureLogic arising from a breach of contract in a private shareholder transaction.

37.    By reason of their membership on SecureLogic's Board of Directors and/or positions as executive officers of the Company, the Defendants were each controlling persons of SecureLogic and had the power and influence to cause and did cause, the Company to engage in and/or permit the conduct complained of herein.

<u>**THE ACTS COMPLAINED OF**</u>

38.    SecureLogic's executives – namely Defendants Koren, Dolev, Flynn, Yeffet, Gross and Klein - are directly responsible for the Company's slide toward financial oblivion; they have refused to adhere to Board directives, egregiously wasted corporate assets and engaged in self-dealing and gross corporate mismanagement.  A comparison of the six-month period ending June 30, 2006, with the same period in 2005 reveals that although revenues were down 50% (a decrease from $558,000 to $280,000), both "selling and marketing" and "general and administrative" expenses were up (a combined increase of over 25%, from $952,000 to $1,205,170).

<u>**Refusal to Adhere to Board Directives**</u>

39.    In an effort to curtail spending, SecureLogic's Board of Directors has passed three separate cost-cutting resolutions, which in part called for the termination of non-performing and/or redundant employees. These were routinely not carried out by Defendants.

40.    In December 2005, the Board promulgated its first cost-cutting resolution. In relevant part, the Board directed management to immediately terminate the

employment of two computer programmers.   The Defendants, on their own accord, decided not to follow this Board resolution and refused to terminate both programmers.

41.     In April 2006, the Board issued its second cost-cutting plan, again designed specifically to streamline operations by terminating non-performing employees. Among other things, nine employees were to be terminated. In defiance of the Board, three of those nine employees were not promptly terminated, and one remains employed by the Company to this day.

42.     In August 2006, the Board passed its third cost-cutting plan. This plan again called for certain specified necessary layoffs, yet Defendants simply refused to terminate two of the employees as specifically directed by the Board.

**Waste and Mismanagement**

43.     In addition to the Executives' repeated refusal to adhere to board resolutions, the Executives' waste and mismanagement of corporate assets is inexcusable. A striking instance of waste, mismanagement and self-dealing involves SecureLogic's relationship with Paradigma. Paradigma is an affiliate of SecureLogic that is owned by Defendant Koren.  Defendant Koren receives compensation from Paradigma and he has ensured that the affiliate has not repaid $80,000 owed to the cash-strapped SecureLogic.

44.     Additionally, the Defendants, who each reside in Israel, earn wages that are more than double what similar Israeli executives receive, and granted themselves retroactive pay increases in a further abuse of their positions. For instance, Defendant Koren, as Chief Executive Officer, had a base salary of $133,656 before the Plaintiff acquired approximately 7.9% of the outstanding common stock of SecureLogic. Following the acquisition, Defendant Koren's base salary jumped to $228,000 with an

additional $54,762 in benefits, bringing his total annual compensation to $282,162. The average base salary in Israel for an equivalent executive is $118,000. Defendant Koren also took additional cash in lieu of vacation time "to be earned."

45.    Defendant Yeffet, the Chief Financial Officer, had a base salary before the aforesaid acquisition of $82,836 and his base salary jumped to $180,000 after the acquisition, with an additional $54,200 in benefits, for total compensation of $234,200. The average base salary for a similarly situated Israeli chief financial officer is $90,000.

46.    Defendants Klein, Dolev and Gross also each earned roughly double what equivalent Israeli executives in their positions earn.

47.    Each of the Defendants were only able to procure such beneficial employment agreements for themselves by improperly creating their own board of directors for the Company's wholly owned subsidiary, SpaceLogic, and issuing themselves employment contracts without advising SecureLogic's Board of their action.

48.    In addition to paying themselves compensation well in excess of what similar Israeli executives receive, and failing to accomplish anything for the Company in exchange for that excessive compensation, each of the Defendants caused the Company to lease very expensive vehicles through SecureLogic, contributing even further to the Company's excessive level of expenditures and leading to the rapid depletion of capital.

49.    The Defendants continued insistence on unnecessary and extravagant "business" travel has only exacerbated the depletion of capital while failing to generate any revenues.

50.    Finally, in or about December 2004, the Defendants presented to SecureLogic's Board of Directors a proposed merger between Logistics Advanced

Systems A.S. Ltd. and Space-Logic Ltd. Under the terms of this transaction, Logistics was to transfer all of its assets and liabilities to Space-Logic with the termination and liquidation of Logistics. Defendant Koren, in clear breach of his fiduciary duty, misinformed his fellow Board members by proclaiming that this transaction would have significant beneficial tax advantages for the Company and would not provide any personal benefits to the Company's Executives. That was incorrect and deliberately misleading; had the transaction been consummated, the Executives would each have gained substantial tax deferrals by locking up significant corporate assets at the Company's expense. Thus rather than resulting in substantial benefits to the Company, as represented, the deal would have had a significant adverse impact upon the Company by freezing corporate assets indefinitely.   Such blatant fraud demonstrates the manner in which Defendants have improperly conducted and mismanaged the Company's affairs.

51.   Furthermore, by virtue of their improper expansion of the Board of Directors and improper creation of an Executive Committee Defendants have consolidated power and control of the Company to the detriment of the minority shareholders.

52.   Defendants' mismanagement and failure to follow even the most basic of corporate formalities has led to the revocation of the Company's authorization to do business in the State of Nevada.  As of April 1, 2006, SecureLogic Corp. is no longer authorized to do business in that state due Defendants' failure to comply with the state law filing requirements.

53.   Defendants have further used the assets of SecureLogic to protect their own interests.   Following the filing of the Summons and Complaint in this action, on or

about November 19, 2006 defendants Koren, Dolev, Flynn, Yeffet and Klein as Directors of SecureLogic voted to have SecureLogic indemnify themselves and Gross from the allegations in the lawsuit.   The discussion and vote taken with respect to the indemnification failed to comply with the requirements of N.R.S. 78.7502(2).   Directors Deson and Goodman voted in opposition to this action.

54.   Compounding this illegal action, self-dealing and conflict of interest, Defendants retained as counsel for themselves the law firm of Pepper Hamilton, LLP which was also retained as corporate counsel to SecureLogic.

55.   Subsequently, in a further episode of self-dealing and waste, on or about November 26, 2006, the Executive Committee of the Board of Directors, in a closed session, voted to have SecureLogic indemnify defendant Koren and his wife with respect to a private lawsuit involving the personal sale by Koren of shares of SecureLogic to Jaroslowicz and Treeline.  This transaction was in no way related to the scope of Koren's duties as a Director and/or Officer of SecureLogic.  The discussion and vote taken with respect to the indemnification failed to comply with the requirements of N.R.S. 78.7502(2).

56.   On or about January 19, 2007, defendant Koren disseminated the agenda for the upcoming Board of Directors meeting of SecureLogic to take place on January 23, 2007.  In that agenda he included a memorandum prepared by Pepper Hamilton LLP, ostensibly created at the behest of the Executive Committee of the Board of Directors for the consideration of deregistration of the stock of SecureLogic from the Over The Counter Bulletin Board (OTCBB).

57.    By de-registering the stock, Defendants would have freed themselves of Securities and Exchange Commission reporting requirements that provide necessary oversight to their transactions.   De-registration would also have caused immediate, irreparable harm to the shareholders as once SecureLogic was de-registered, it would:

a) Require more than six to eight months for SecureLogic to attempt to re-register, a period of time longer than the capital of SecureLogic is expected to last;

b) Force SecureLogic to be listed on the "pink sheets" from where it would be impossible for SecureLogic to raise additional capital;

c) Render SecureLogic in breach of contract with owners of many stock options of SecureLogic whose options must be registered when exercised;

d)  Render SecureLogic in breach of its agreement with Monterey Bay Tech, Inc. which required that as part of the merger that SecureLogic remain registered and comply with the terms of the Sarbanes-Oxley act; and

e)  Eliminate oversight of corporate activities by eliminating reporting requirements to the Securities and Exchange Commission.

58.    Voting on the de-registration was only halted by plaintiff Gardner's obtaining of a temporary restraining order from the Supreme Court of the State of New York.

## DERIVATIVE ACTION ALLEGATIONS

59.    Plaintiffs bring this action derivatively in the right and for the benefit of SecureLogic to redress injuries suffered, and to be suffered, by SecureLogic as a direct result of the Defendants' breaches of fiduciary duties, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment.

60.     Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in this litigation.

61.     Plaintiffs presently own SecureLogic common shares and intend to retain said shares through the duration of this litigation.

62.     The wrongful actions complained of herein were fraudulently concealed from SecureLogic's shareholders and will persist in subjecting the Company to continuing harm because the adverse consequences of the injurious actions continue.

### DEMAND-EXCUSED ALLEGATIONS

63.     Plaintiffs have not made any demand upon the current SecureLogic Board of Directors to commence an action asserting the claims herein for the damages suffered by SecureLogic, since such demand would be a futile, wasteful and useless act, for the following reasons:

a.     Five of the seven current members of the Board of Directors participated in or approved many of the acts and omissions or were on notice of and/or recklessly disregarded the wrongs complained of herein;

b.     The egregious acts complained of herein constitute bad faith, violations of law, and breaches of the fiduciary duties owed by the Defendants, and were not the product of any business judgment;

c.     In order to bring this action for breaching their fiduciary duties, the Defendants would have been required to sue themselves, which they would not do;

d.     Defendants Koren, Dolev and Flynn received substantial financial compensation and other benefits by virtue of their membership on SecureLogic's Board of Directors.   They have thus benefited from the wrongdoing herein alleged and are

incapable of exercising independent objective judgment in deciding whether to bring this action;

       e.    Demand is also excused because each of the Defendants has ratified the egregious actions alleged herein, and these same Defendants cannot be expected to prosecute claims against themselves, if Plaintiff had demanded that they do so;

       f.    Demand is also excused because the Defendants participated in, approved, and/or permitted the wrongs alleged herein, concealed or disguised those wrongs, recklessly and/or negligently disregarded them, and are therefore not disinterested parties and lack sufficient independence to exercise business judgment as alleged herein;

       g.    Demand is also excused because the Defendants authorized and engaged in blatant self-dealing on behalf of their own self-interest;

       h.    Demand is also excused because the Defendants improperly changed the composition of the Board of Directors of the Company, both by increasing its size and creating an Executive Committee; and

       i.    On or about September 21, 2006, the Plaintiff Gardener filed a 13-d letter with the Securities and Exchange Commission in which he detailed the allegations asserted herein.  This letter was addressed to Defendant Koren with copies to Defendants Dolev and Flynn.  Defendants Koren, Dolev and Flynn refusal to rectify the wrongs committed by they and their fellow defendants, their continued breaches of their respective fiduciary duties and their continued on-going course of conducted as described in detail above, further demonstrate that demand is excused.

64.     This lawsuit is essential to preserve the rights of minority shareholders of the Company and to appoint a receiver to prevent further waste of corporate assets.

**CAUSES OF ACTION**

**COUNT I**

**TEMORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND RECEIVER**

65.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

66.     By their misfeasance, malfeasance or nonfeasance and self-dealing Defendants colluded and committed fraud and gross mismanagement in the conduct and control of the affairs of SecureLogic.

67.     The assets of the SecureLogic have been, and continue to be, in danger of waste, sacrifice, or loss.

68.     Absent intervention, the Company is at risk of becoming insolvent.

69.     Absent intervention, the rights of the minority shareholders of will continue to be ignored and exploited.

70.     Absent intervention, the shares of stock of SecureLogic are at risk of being deregistered from the OTCBB.

71.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

72.     Plaintiffs, as holders of shares in excess of one tenth of the issued and outstanding stock, seek a temporary restraining order and preliminary injunction appointing a receiver for SecureLogic, pursuant to Nevada Revised Statute 78.650.

73.     Plaintiffs additionally seek a permanent injunction stripping Defendants Koren, Dolev, Flynn Yeffet and Klein of their respective positions as members of SecureLogic's Board of Directors.

74.     Plaintiffs further seek a temporary restraining order, preliminary injunction and/or permanent injunction barring Defendants from de-registering SecureLogic from the OTCBB.

## COUNT II

## DERIVATIVE CLAIM FOR BREACH OF FIDUCIARY DUTIES

75.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.     Defendants all owed and owe a fiduciary duty to SecureLogic and its stockholders.  By reason of their fiduciary relationships, Defendants all owed and owe SecureLogic the highest obligation of good faith, fair dealing, loyalty, due care and diligence in the management and administration of the affairs of the Company.  Moreover, Defendants owed and owe a duty of full and candid disclosure of all material facts thereto.

77.     Defendants have been responsible for the gross and reckless mismanagement of SecureLogic.  Defendants abdicated their corporate responsibilities by mismanaging the Company in at least the following ways:

    a.     failing to adhere to Board resolutions;

    b.     granting themselves compensation far in excess of what they deserve and far in excess of what similarly situated executives receive;

    c.     numerous acts of self-dealing in which Defendants acted to enrich

or benefit themselves at the expense of the corporation including

indemnification;

d.      deliberately misinforming their fellow stockholders with respect to

the implications of a potential corporate transaction in an attempt

to gain personal benefits at the expense of SecureLogic and its

stockholders; and

e.      numerous  instance  of  corporate  waste  including,  charging

outrageous personal expenses to the Company.

78.     The Defendants, individually and in concert, engaged in the aforesaid

conduct in intentional breach and/or reckless disregard of their fiduciary duties to the

Company.  Defendants conspired to abuse, and did abuse, the control vested in them by

virtue of their respective positions in the Company.   By reason of the foregoing,

Defendants have breached their fiduciary obligations to SecureLogic and its shareholders.

79.     SecureLogic and its shareholders have been injured by reason of the

Defendants' intentional breach and/or reckless disregard of their fiduciary duties to the

Company, self-dealing and corporate waste.  Plaintiff, as a shareholder and representative

of SecureLogic, seeks damages and other relief for the Company as hereinafter set forth.

80.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

## COUNT III

## DERIVATIVE CLAIM FOR ABUSE OF CONTROL

81.     Plaintiffs incorporate by reference and realleges each and every allegation

set forth above, as though fully set forth herein.

82.     Defendants' misconduct alleged herein constituted an abuse of their ability to control and influence SecureLogic, for which they are legally responsible

83.     As a direct and proximate result of Defendants' abuse of control and self-dealing, SecureLogic has suffered substantial monetary damages and will suffer further and even greater damage in the future.  Defendants are liable to the Company as a result of the misconduct alleged herein.

84.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

## COUNT IV

## DERIVATIVE CLAIM FOR GROSS MISMANAGEMENT

85.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

86.     By their actions alleged herein, Defendants abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and businesses of SecureLogic in a manner consistent with the operations of a publicly held corporation.

87.     As a direct and proximate result of Defendants' gross mismanagement and breaches of duty and self-dealing alleged herein, SecureLogic has suffered substantial monetary damages, as well as further and even greater damage in the future.  Defendants are liable to the Company as a result of the misconduct alleged herein.

88.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

## COUNT V

## DERIVATIVE CLAIM FOR WASTE OF CORPORATE ASSETS

89.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.     As a result of the improper conduct described herein and by failing to properly consider the interests of the Company and its public shareholders, Defendants have caused Secured Logic to waste valuable corporate assets by: 1) awarding themselves outrageous compensation packages; 2) ensuring that SecureLogic would pay many of their personal expenses; 3) continuing to employ individuals friendly to the Defendants notwithstanding numerous board resolutions demanding that these individuals' employment be terminated; and 4) numerous instances of self-dealing including improper indemnification of Defendants.

91.     As a direct and proximate result of Defendants' waste of corporate assets, the Defendants are liable to the Company.

92.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

## COUNT VI

## DERIVATIVE CLAIM FOR UNJUST ENRICHMENT

93.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

94.     By their wrongful acts and omissions, Defendants were unjustly enriched at the expense, and to the detriment, of SecureLogic.

95.     Plaintiffs, as shareholders and representatives of SecureLogic, seek the following: 1) restitution; 2) damages; 3) an Order of this Court stripping Defendants Koren, Dolev, Flynn, Yeffet and Klein of their respective positions as members of SecureLogic's Board of Directors; 4) an Order of the Court disgorging all benefits and

other compensation obtained by these Defendants from their wrongful acts and fiduciary breaches; and 5) other relief for SecureLogic, in an amount to be proven at trial.

96.     Plaintiffs, on behalf of SecureLogic, have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment as follows:

1)     Determining that this action is a proper derivative action maintainable under law and that demand is excused;

2)     Issuing a Temporary Restraining Order and a Preliminary Injunction ordering the appointment of a receiver on behalf of SecureLogic and/or enjoining Defendants from de-registering SecureLogic from the OTCBB;

3)     Issuing a Permanent Injunction appointing a receiver on behalf of SecureLogic and/or enjoining Defendants from de-registering SecureLogic from the OTCBB

4)     Stripping Defendants Koren, Dolev, Flynn, Yeffet and Klein of their respective positions as members of SecureLogic's Board of Directors;

5)     Against each individual Defendant for restitution and/or damages in favor of Plaintiffs, on behalf of SecureLogic and its shareholders;

6)     Awarding Plaintiffs the costs of disbursements of the action, including reasonable allowance of fees for Plaintiff's attorneys, experts and accountants; and

24

7)      Granting Plaintiffs such other and further relief as the Court deems

just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of each of the aforesaid issues.

Dated: New York, New York
March 6, 2007

Respectfully submitted,

Law Offices of G. Oliver Koppell &
Associates.

By: _____/s/_____
   G. Oliver Koppell (GK 4851)
   Daniel F. Schreck (DS 7680)
Attorneys for Plaintiff
99 Park Ave., Suite 800
New York, New York 10016

GERSTEN SAVAGE, LLP
Robert Wolf (RW 9711)
Adam D. Mitzner (AM 8325)
600 Lexington Avenue
New York, New York 10022
(212) 752-9700