Thomas E. Zemaitis (TZ 7168)
PEPPER HAMILTON LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
Ph.     (215) 981-4361
Fax     (215) 981-4750

Attorneys for Defendants Gary Koren,
Shalom Dolev, Cathal L. Flynn, Iftach Yeffet,
Tony Gross, and Michael Klein

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL GARDNER, BAYTREE CAPITAL ASSOCIATES, LLC, TREELINE INVESTMENT PARTNERS, LLP, SEAN DESON, DAVID JAROSLAWICZ, and GENE ROSENFELD, Derivatively and on Behalf of SecureLogic Corp., <br><br> Plaintiffs, <br><br> - against – <br><br> GARY KOREN, SHALOM DOLEV, CATHAL L. FLYNN, IFTACH YEFFET, TONY GROSS, and MICHAEL KLEIN, <br><br> Defendants, <br><br> - and – <br><br> SECURELOGIC CORP., <br><br> Nominal Defendant. | Civil No.  07-CV-645 (MGC) <br><br><br><br> MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.  ARGUMENT ...................................................................................................... 4

  A.  This Court Does Not Have Personal Jurisdiction Over Defendants. ................................. 4

    1.  New York Law Does Not Permit The Exercise Of Jurisdiction Over Defendants......... 5

    2.  The Exercise of Jurisdiction Over Defendants Does Not Comport With Due Process. 10

  B.  This Matter Should Be Dismissed On The Grounds of Inconvenient Forum................... 13

  C.  Plaintiffs Do Not Plead Demand Futility With Sufficient Particularity. .......................... 15

    1.  Plaintiffs Do Not Satisfy the Fundamental Standards for Pleading Demand Futility. . 16

    2.  Plaintiffs Do Not Support Their Claims with the Required Particularity..................... 20

IV.   CONCLUSION ............................................................................................... 27

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Agency Rent A Car System v. Grand Rent A Car Corp.*, 98 F.3d 25 (2nd Cir. 1996) .................... 6

*Amer. Nat'l Bank & Trust v. Alba*, 111 A.D.2d 294 (N.Y. App. Div. 1985) ................................ 11

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ................................................................ 16, 17, 19

*Bader & Bader v. Ford.*, 66 A.D.2d 642 (N.Y. App. Div. 1979) ................................................ 15

*Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65 (N.Y. 1984) .................... 13

*In re Baxter Int'l, Inc. S'holder Litig.*, 654 A.2d 1268 (Del. Ch. 1995) ........................................ 18

*Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003) .................................................................................................................................... 21

*Blasband v. Rales*, 971 F.2d 1034 (3d Cir. 1992) .......................................................................... 17

*Brandt v. Toraby*, 273 A.D.2d 429 (N.Y. App. Div. 2000) ............................................................ 4

*Bulk Oil Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36 (S.D.N.Y. 1983) ........................................ 9

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ........................................................ 10, 11, 12

*Cucullu v. Lowe*, 241 A.D.2d 474 (N.Y. App. Div. 1997) ............................................................ 10

*D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) .......................................................... 4

*Family Internet, Inc. v. Cybernex, Inc.*, 1999 U.S. Dist. LEXIS 15549 (S.D.N.Y. Oct. 6, 1999) ................................................................................................................................ 5, 6

*Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317 (N.Y. 1980) .................................. 9

*First Union National Bank v. Banque Paribas*, 135 F. Supp. 2d 443 (S.D.N.Y. 2001) ................ 13

*In re Forest Lab. Inc. Derivative Litig.*, 450 F. Supp. 2d 379 (S.D.N.Y. 2006) .................... 16, 19

*Friedman v. Beningson*, 1995 Del. Ch. LEXIS 154 (Del. Ch. Dec. 4, 1995) ................................ 18

*Grimes v. Donald*, 673 A.2d 1207 (Del. 1996) .......................................................................... 22

*Hanson v. Denckla*, 357 U.S. 235 (1958) .......................................................................... 6, 11

*Hart v. General Motors Corp.*, 129 A.D.2d 179 (N.Y. App. Div. 1987) ......................................15

*Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ............................11 12

*Int'l Equity Inv., Inc. v. Opportunity Equity Partners, Ltd.*, 2007 U.S. Dist. LEXIS 14207 (S.D.N.Y. March 1, 2007).........................................................................................................8

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)...................................................................10

*Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474 (N.Y. 1984) ...........................................13, 14

*In re J.P. Morgan Chase & Co.*, 906 A.2d 808 (Del. Ch. April 29, 2005)...................................17

*Johnson v. Ward*, 4 N.Y.3d 516, 519 (N.Y. 2005) ......................................................................6

*Kamen v. Kemper Finance Services, Inc.*, 500 U.S. 90 (1991) ...................................................13

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (N.Y. 1988) ....................................................5

*Lamarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210 (N.Y. 2000)...............................................4, 10, 13

*Laufer v. Ostrow*, 55 N.Y.2d 305 (N.Y. 1982) .........................................................................5, 6

*Levine v. Smith*, 591 A.2d 194 (Del. 1991)................................................................................17

*M & M Packaging, Inc. v. Kole*, 183 Fed. Appx. 112 (2d Cir. 2006)............................................8

*McKee Electric Co. v. Rauland-Borg Corp.*, 20 N.Y.2d 377 (N.Y. 1967)....................................6

*In re Merck & Co., Inc. Derivative & "ERISA" Litig.*, 2006 U.S. Dist. LEXIS 79294 (D.N.J. May 5, 2006) ...............................................................................................................16

*Miller v Amer. Tel. and Tel.  Co.*, 394 F. Supp. 58 (E.D.Pa. 1975)............................................12

*Parnes v. Bally Entm't Corp.*, 2001 Del. Ch. LEXIS 34 (Del. Ch. Feb 23, 2001) .......................17

*Path Instruments Int'l Corp. v. Asahi Optical Co. Ltd.*, 312 F. Supp. 805 (S.D.N.Y. 1970) ..........5

*Pogostin v. Rice*, 480 A.2d 619 (Del. 1984) ............................................................17, 19, 23, 26

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ..................................................................17, 18, 20

*Sanchez v. Major*, 734 N.Y.S.2d 211 (N.Y. App. Div. 2001) ..................................................4, 11

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ...................................................................................10

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171 (Nev. 2006) ..................................................... *passim*

*Stamm v. Deloitte and Touche*, 202 A.D.2d 413 (N.Y. App. Div. 1994) .......................................14

*Tebedo v. Nye*, 45 Misc. 2d 222 (N.Y. Sup. Ct. 1965) ..................................................................9

*United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113 (S.D.N.Y. 1991) ............................................................................................................................................9

*In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342 (Del. Ch. 1998) ......................................21

*Weiss v. Routh*, 149 F.2d 193 (2d Cir. 1945) ................................................................................13

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) ............................................................................21

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ..............................................12

## STATUTES

8 Del. C. § 102(b)(7) .....................................................................................................................18

8 Del. C. § 141(a) ..........................................................................................................................16

Fed. R. Civ. P. 9(b) - ....................................................................................................................23

Fed. R. Civ. P. 23.1 - .....................................................................................................................16

Nev. Rev. Stat. § 78.138(7) ...........................................................................................................19

Nev. Rev. Stat. § 78.7502(2) ..........................................................................................................19

Nev. R. Civ. P. 23.1 ......................................................................................................................16

NY CPLR § 301 ..........................................................................................................................7, 8

NY CPLR § 302 ..................................................................................................................... *passim*

NY CPLR § 3211(a) .......................................................................................................................10

## MISCELLANEOUS

*David Mace Roberts & Rob Pivnick, Tale of the Corporate Tape: Delaware, Nevada and Texas,* 52 Baylor L. Rev. 45, 51 (2001) ....................................................................................18

## I.     INTRODUCTION

This is a motion to dismiss the Amended Complaint ("Am. Compl.," copy attached as Exhibit G) against Gary Koren ("Koren"), Shalom, Dolev ("Dolev"), Cathal L. Flynn ("Flynn"), Iftach Yeffet ("Yeffet"), Tony Gross ("Gross"), and Michael Klein ("Klein"), (collectively the "Defendants") based on a lack of personal jurisdiction, inconvenient forum, and failure to plead demand futility, which is a prerequisite to maintaining a derivative action. Plaintiff Michael Gardner, a shareholder of SecureLogic Corp. ("SecureLogic"), filed a complaint, purportedly as a shareholder derivate action, against Defendants which also named SecureLogic, as a nominal defendant only.  The complaint alleged that Defendants breached their fiduciary duties as directors and officers of SecureLogic.  The complaint was recently amended to include additional alleged breaches of fiduciary duty and to add other shareholders of SecureLogic as plaintiffs ("Plaintiffs").

The Amended Complaint should be dismissed because there is no personal jurisdiction over Defendants under New York's jurisdictional statutes and because it would offend principles of due process under the Fourteenth Amendment to the United States Constitution to compel Defendants to appear in this action.  Furthermore, the Court should dismiss the Amended Complaint on inconvenient forum grounds because Defendants live and work in Israel or California and SecureLogic is a Nevada corporation, such that it would be substantially unjust to prosecute this action in New York.  Finally, dismissal is warranted because the Amended Complaint is defective on its face for failing to plead demand futility with sufficient particularity, thereby precluding Plaintiffs from maintaining a derivative action.

## II.      STATEMENT OF FACTS

By their Amended Complaint, Plaintiffs, as shareholders of SecureLogic, purport to bring a derivative claim on behalf of the corporation.  The gravamen of the claim is that Defendants, none of whom resides, works or conducts personal business in New York, breached their fiduciary duties to SecureLogic, a Nevada corporation, through a series of activities, none of which occurred in New York.

Defendants Koren, Dolev, Yeffet, Gross, and Klein are citizens and domiciliaries of Israel and Defendant Flynn is a domiciliary of California.  (*See* Declarations of Koren, Dolev, Flynn, Yeffet, Gross, and Klein, annexed to the Notice of Motion as Exhibits A, B, C, D, E, and F, respectively).  None of the Defendants owns, uses, or possesses any real property within the State of New York.  (*See id*.)  None of the Defendants conducts any business on his own behalf or solicits any business on his own behalf in the State New York, and none of them has ever engaged in any other persistent course of conduct in the State New York on his own behalf.  (*See id.*)  None of the Defendants derives any income or other revenue from goods used or consumed or services rendered in the State of New York, nor does any of the Defendants personally derive any income or other revenue from interstate or international commerce.  (*See id*.)

Defendants Koren, Dolev, Flynn, Yeffet, and Klein are currently members of the Board of Directors of SecureLogic.  (*See* Ex. A, B, C, D & F).  The breaches alleged in the Amended Complaint of Koren's and Dolev's fiduciary duty involved their actions while in Israel or otherwise not in New York.  (*See* Ex. A & B).  The alleged breaches of Defendant Flynn's fiduciary duties involved his actions while in California or otherwise not in New York.  (*See* Ex. C).  Defendants Yeffet and Klein were elected to the Board of Directors of SecureLogic on November 9, 2006, which is after most of the alleged events giving rise to Plaintiffs' claims occurred.  (*See* Ex. D & F).  The limited alleged breaches of Yeffet's and Klein's fiduciary duties

involved their actions while in Israel or otherwise not in New York.  (*See id.*)  Defendant Tony Gross is not a director, an officer, or an employee of SecureLogic.  (*See* Ex. E).

SecureLogic has conducted most of its Board Meetings telephonically.  (*See* Ex. A & B).  Indeed, there have been only two Board meetings that have not been held telephonically.  One of these in-person Board meetings was held in California and the other was held in Israel.  (*See id.*)  No Board meetings have been held in New York.  (*See id.*)  The causes of action asserted in the Amended Complaint do not arise from Defendants' transaction of business within New York or from any contract to provide goods or services within New York.  (*See* Ex. A, B, C, E, & F).  Defendant Yeffet does not transact any business within New York or contract anywhere to provide goods or services within New York.  (*See* Ex. D).

SecureLogic is a Nevada corporation, with all management and control of the corporation in Israel, and no SecureLogic employees are located in New York.  (*See* Ex. A, B, C, D, & F).  The Amended Complaint states that SecureLogic maintains an address at 40 Wall Street, 58th Floor, New York, New York.  In fact, this location is the address of Plaintiff Baytree Capital Associates, LLC.  (*See* Ex. A & B).  This Wall Street address is not, nor has it been, an address from which SecureLogic regularly conducts business of the company.  (*See id.*)  SecureLogic has used this Wall Street address only in communications with the Securities and Exchange Commission (and only because SecureLogic was advised by Plaintiffs that a U.S. address was required for SEC filings) and for the receipt of some SecureLogic correspondence.  (*See id.*)  While SecureLogic had considered using the Wall Street office as a starting place for its plan to run operations in the United States, that plan never materialized.  (*See id.*)  On a few limited occasions, SecureLogic has used Baytree's offices at the Wall Street address as a convenient place to meet with potential investors and vendors in New York.  (*See* Ex. A & B).

SecureLogic has also met with potential investors and vendors at many places throughout the US, Europe and Israel.  (*See id.*)  In any event, none of the Defendants engaged in any activity that is the subject of the Amended Complaint at the Wall Street office.  (*See id.*).

## III.    ARGUMENT

### A.    This Court Does Not Have Personal Jurisdiction Over Defendants.

"In diversity cases, the issue of personal jurisdiction is governed by the law of the forum state . . . so long as the district court's exercise of jurisdiction comports with the requirements of due process."  *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006) (internal citations omitted).  Pursuant to New York's Civil Practice Law and Rules ("CPLR") § 3211(a)(8) the Court should dismiss an action when it lacks personal jurisdiction over Defendants.  The plaintiff bears the burden of demonstrating that personal jurisdiction exists over the defendant.  *See Sanchez v. Major*, 734 N.Y.S.2d 211, 212 (N.Y. App. Div. 2001) (citing *Brandt v. Toraby*, 273 A.D.2d 429, 430 (N.Y. App. Div. 2000)).  Here, Plaintiffs have not carried that burden.

A personal jurisdiction analysis requires consideration of both New York's long-arm statute and Federal due process.  In this analysis, the court must first determine if either CPLR § 301 or § 302, New York's jurisdictional statutes, confers jurisdiction over non-resident defendants, in light of the non-resident's contacts with New York.  *See Lamarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (N.Y. 2000).  If the court is satisfied that one of New York's jurisdictional statutes confers jurisdiction, the court then determines whether the exercise of jurisdiction satisfies Federal due process, as explained by *International Shoe* and its progeny. *See id.*  Only if the New York jurisdictional statutes and Federal due process requirements are satisfied can a court properly assert personal jurisdiction over a non-resident defendant.  In the

present matter, neither jurisdictional threshold can be crossed and, as such, this matter should be dismissed for lack of personal jurisdiction.

**1.      New York Law Does Not Permit The Exercise Of Jurisdiction Over Defendants.**

In New York, establishing personal jurisdiction over a corporation is not, by itself, sufficient to establish personal jurisdiction over the corporation's directors and officers.[1] *See Path Instruments Int'l Corp. v. Asahi Optical Co. Ltd.*, 312 F. Supp. 805, 810 (S.D.N.Y. 1970).  Accordingly, Plaintiffs' claims that SecureLogic's "principal place of business" and "principal United States headquarters" are in New York are irrelevant, as well as inaccurate. Because there must be a showing beyond jurisdiction over the corporation, Plaintiffs must establish that the Defendants' own conduct satisfies the jurisdictional requirements of CPLR § 301 or 302.  *See Family Internet, Inc. v. Cybernex, Inc.*, 1999 U.S. Dist. LEXIS 15549, at *13 (S.D.N.Y. Oct. 6, 1999).

**a.      CPLR § 301 does not apply to Defendants.**

Defendants are not subject to jurisdiction under the general jurisdiction standard of CPLR § 301, which incorporates the common law by granting New York courts "jurisdiction over persons, property, or status as might have been exercised heretofore."  *See Family Internet*, 1999 US. Dist. LEXIS 15549, at *7.  The sole circumstance in which a foreign defendant may be subject to personal jurisdiction under CPLR § 301 is when that defendant is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction."  *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10 (N.Y. 1982).  A

---

[1] The only exception to this general rule occurs when, assuming the corporation is subject to jurisdiction, the Court finds that the corporation was acting as an agent on behalf of Defendants, the Defendant would be subject to personal jurisdiction.  *See Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d. 460 (N.Y. 1988).  Agency on behalf of the Defendants is not alleged in our case.

natural person "does not subject himself, individually, to the CPLR § 301 jurisdiction of our courts, however, unless he is doing business in [New York] individually." *Id.* at 313.

The individual Defendants have no personal business activities in New York. Those who had any limited business activities in New York of any sort pursued such activities on behalf of SecureLogic and/or SpaceLogic. Thus, personal jurisdiction under CPLR § 301 does not lie.

> **b.     CPLR § 302(a)(1) does not confer jurisdiction over Defendants because the claims arise out of business transacted outside New York.**

Plaintiffs also fail to establish that personal jurisdiction over the individual Defendants exists pursuant to CPLR § 302(a). Under section 302(a)(1), in order to establish personal jurisdiction over a non-resident, the cause of action must arise out of the transaction of business that occurs in New York. *See Family Internet*, 1999 U.S. Dist. LEXIS 15549, at *14. A defendant who "purposefully avails [himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law" subjects himself to personal jurisdiction under CPLR § 302(a)(1). *McKee Elec. Co. v. Rauland-Borg Corp.*, 20 N.Y.2d. 377, 382 (N.Y. 1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The Amended Complaint fails to allege that the cause of action arose from the transaction of business by Defendants in the State of New York. *See Johnson v. Ward*, 4 N.Y.3d 516, 519 (N.Y. 2005). Indeed, the duties of SecureLogic's Board were carried out in the non-resident Defendants' respective domiciles. A claim arises out a party's transaction of business only when there is a substantial nexus between the business transacted and the claim asserted. *See Agency Rent A Car Sys. v. Grand Rent A Car Corp.*, 98 F.3d 25, at *13-14 (2nd Cir. 1996). No such nexus exists here. Plaintiffs have not demonstrated that the limited activities of

Defendants in New York (on behalf of SecureLogic) are substantially connected to Plaintiffs' causes of action.

Plaintiffs, without any specificity, claim that Defendants solicit and transact business in New York.  However, a careful examination of the allegations in the Amended Complaint, which fall into two general categories, reveals that Plaintiffs fail to support this generalization with allegations demonstrating that Defendants solicit and transact business in New York.  First, the Amended Complaint contains allegations that Defendants breached their duties as officers of SecureLogic by:  (1) failing to adhere to board resolutions; and (2) granting themselves excessive compensation and benefits.  Second, Plaintiffs allege that Defendants breached their fiduciary duties as board members of SecureLogic by:  (1) continuing a detrimental relationship with a company called Paradigma; (2) failing to apprise shareholders of negative tax implications of a proposed, but ultimately unconsummated, merger with Logistics Advanced Systems; (3) expanding the board of directors; (4) creating and empowering an Executive Committee of the Board of Directors; (5) allowing SecureLogic's authorization to do business in the state of Nevada to lapse; (6) attempting to deregister SecureLogic with the SEC; and (7) indemnifying defendants in this action and in a parallel suit by Treeline Investment Partners and David Jaroslawicz against Gary Koren and his wife.

All of the actions of Defendants that are alleged in the Amended Complaint occurred outside of the State of New York.  The allegations in the first category, those arising from Defendants acting as officers, all occurred in the domicile of the individual Defendants.  The allegations in the second category, those arising from Defendants acting as directors, occurred in the location where Defendants cast their votes for the board decisions that give rise to the allegations in the Amended Complaint.  All such votes by Defendants occurred outside the

State of New York.  Additionally, there was a specific decision by the founders of SecureLogic

to avail themselves of the benefits and protections of Nevada law through the decision to

incorporate SecureLogic in that state.  In sum, since all the decisions and actions alleged in the

Amended Complaint occurred outside the state of New York, jurisdiction over Defendants is

improper under CLPR § 302(a)(1).

> **c.** **Jurisdiction does not exist under CPLR §§ 302(a)(2) or (a)(3).**

Similarly, Plaintiffs have not established jurisdiction over Defendants under

CPLR § 302(a)(2) or § 302(a)(3), providing for jurisdiction in limited circumstances where torts

have been committed within or have caused harm within New York.  Since the actions and

decisions alleged in the Amended Complaint did not occur within New York, personal

jurisdiction cannot lie under CPLR § 302(a)(2), as this provision provides jurisdiction only when

torts have been committed within New York.

CPLR § 302(a)(3) provides jurisdiction arising from torts committed without New

York causing injury to a person within the state, when the tortfeasor also:

> (i) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or (ii)
> expects or should reasonably expect the act to have consequences
> in the state and derives substantial revenue from interstate or
> international commerce.

The complaint must aver the additional elements of regular solicitation of business in the state or

of reasonable expectation of in-state consequences coupled with defendant's deriving of

substantial revenue from interstate or international commerce.  *See Int'l Equity Inv., Inc. v.*

*Opportunity Equity Partners, Ltd.*, 2007 U.S. Dist. LEXIS 14207, at *11 (S.D.N.Y. March 1,

2007); *M & M Packaging, Inc. v. Kole*, 183 Fed. Appx. 112, at **4 (2d Cir. 2006).  Because the

Amended Complaint contains no allegations that Defendants' actions satisfy any of the

conditions required under CLPR § 302(a)(3), Plaintiffs have not established jurisdiction under CLPR § 302(a)(3).  Nor can Plaintiffs establish that Defendants derive substantial revenue from interstate or international commerce by alleging that they receive compensation from SecureLogic which, in turn, allegedly derives income from interstate or international commerce.  To the contrary, the "individual and not his corporate employer [] must derive 'substantial revenue' for jurisdiction to attach under section 302(a)(3)(ii)."  *Bulk Oil Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 41 (S.D.N.Y. 1983).

Moreover, economic harm to a resident plaintiff does not suffice to fix the situs of the injury within New York's boundaries under § 302(a)(3).[2]  Generally, "the situs of a nonphysical, commercial injury is where the critical events associated with the dispute took place."  *United Bank of Kuwait, PLC v. James M. Bridges, Ltd.*, 766 F. Supp. 113, 116 (S.D.N.Y. 1991) (internal quotes omitted).  Since the claims for breach arise from particularized events – the decisions of directors and the actions of officers – and all these events took place outside of the State of New York, jurisdiction under CPLR § 302(a)(3) does not lie.

### d.    CPLR § 302(a)(4) does not apply to Defendants.

Finally, as Defendants do not use, possess or own any real property in the State of New York, Defendants are not subject to personal jurisdiction under CPLR § 302(a)(4).  This paragraph of the long-arm statute provides *in rem* jurisdiction based on the use of land within State boundaries.  Additionally, for this provision to apply, the cause of action must arise from the use, possession, or ownership of the New York realty.  *Tebedo v. Nye*, 45 Misc.2d 222, 223 (N.Y. Sup. Ct. 1965).

---

[2] A reasonable expectation of consequences in the state must be based on a more direct injury within the State than the residence or domicile of the allegedly injured party.  *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326-27 (N.Y. 1980).

**2.      The Exercise of Jurisdiction Over Defendants Does Not Comport With Due Process.**

Because the exercise of personal jurisdiction does not comport with New York law, it is unnecessary to consider whether that exercise would offend notions of due process under Federal law.  Nonetheless, dismissal for lack of personal jurisdiction is also mandated under this standard.  In determining whether asserting personal jurisdiction comports with Federal due process, the state court must apply the standards set forth in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.  *See Shaffer v. Heitner*, 433 U.S. 186 (1977).

Federal due process requires that the nonresident-defendant have "certain minimum contacts" with New York such that the maintenance of the suit here does not offend "traditional notions of fair play and substantial justice." *Lamarca*, 95 N.Y.2d at 216, (quoting *Int'l Shoe*, 326 U.S. at 316).  This due process limitation protects the nonresident-defendant's "liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful contacts, ties, or relations." *Cucullu v. Lowe*, 241 A.D.2d 474, 475 (N.Y. App. Div. 1997) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)).

The minimum contacts inquiry must focus on the defendant's purposeful activity particularly directed toward the forum state, and not on the unilateral activities of the plaintiff. *See Burger King*, 471 U.S. at 474-75.  To be subject to the personal jurisdiction of a foreign state, the defendant must have purposely availed itself of the privilege of conducting activities within that state, "thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or [as a result of] the unilateral activity of another party or a third person." *Id.* at 475 (internal quotations omitted).

-10-

A defendant avails itself of the privilege of doing business in a state when, through its purposeful conduct, it has created a "substantial connection" with the state, has "deliberately" engaged in "significant activities" in the state, or has created "continuing obligations" between itself and the residents of the state. *Id.* at 475-76. Here, Plaintiffs have not met their burden to prove that Defendants have personal contacts with New York sufficient to sustain personal jurisdiction. *See Sanchez*, 734 N.Y.S.2d at 212.

The minimum contacts necessary for a court to obtain personal jurisdiction vary depending on whether the lawsuit directly relates to the defendant's contacts with the forum state (specific jurisdiction), or whether the case is unrelated to those contacts (general jurisdiction). *See Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 n.8-9 (1984). In both instances, the plaintiff must demonstrate that the defendant purposefully availed himself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of its laws. *See Amer. Nat'l Bank & Trust v. Alba*, 111 A.D.2d 294, 297 (N.Y. App. Div. 1985) (citing *Hanson*, 357 U.S. at 253). In the present matter, regardless of the nature of jurisdiction asserted (general or specific), Defendants do not have sufficient contacts with New York which would support an assertion of personal jurisdiction over Defendants.

Specific jurisdiction arises when the defendant purposely directs its activities at residents of the forum state, and the cause of action "arises out of" or "relates to" those activities. *See Helicopteros*, 466 U.S. at 414 n.8. Plaintiffs' claims in the present matter do not arise out of or relate to any conduct of Defendants directed at the State of New York. The events which gave rise to Plaintiffs' allegations (made on behalf of SecureLogic, a Nevada Corporation) transpired at meetings of SecureLogic's Board of Directors and at the location of the individual Defendants when they were acting in their capacities as Board members and officers. The Board meetings

occurred mainly telephonically, with all participating Defendants located outside New York. There were two in-person Board meetings, which both occurred outside of New York – one in California and the other in Israel.  Further, any other duties of director Defendants giving rise to Plaintiffs' claims involve their actions while located in Israel or otherwise outside of New York. Additionally, Defendant's alleged breaches of duty as officers – receiving excessive compensation and benefits and failing to adhere to board directives – occurred at Defendants' workplaces in Israel or, in the case of defendant Flynn, in his domicile of California.

The only connection between this matter and New York is that New York is Plaintiffs' residence and/or place of business.  Where Plaintiffs choose to live and work, however, is irrelevant in assessing personal jurisdiction over Defendants.  *See Burger King*, 471 U.S. at 474-75.  Moreover, Plaintiffs assert derivative claims in this action.  Derivative claims are asserted on behalf of the company, here SecureLogic, which purposefully availed itself of the laws and privileges of the state of Nevada and which manages and controls its business from of Israel.  Under these circumstances, it cannot be fairly said that Defendants' "conduct and connection with [New York] are such that [they] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There is equally no basis for asserting general jurisdiction over Defendants.  In order for a court to have general jurisdiction, the plaintiff must show that the defendant's contacts with the forum are "continuous and systematic."  *See e.g., Helicopteros*, 466 U.S. at 416.  The sufficiency of Defendants' contacts, as non-domiciliary directors, must be measured on some basis other than the domicile of customers and shareholders.  *Miller v Am. Tel. and Tel. Co.*, 394 F. Supp 58, 64 (E.D.Pa. 1975).  Subjecting the Defendants to general jurisdiction in New York based solely on their status as directors and officers of a foreign corporation that may

do some business in New York would allow them to be sued for any reason in any court in the nation where SecureLogic sells a product or merely attempts to market its products. Basing general jurisdiction on such a tenuous connection does not comport with the "traditional notions of fair play and substantial justice." *Lamarca*, 95 N.Y.2d at 216 (quoting *Int'l Shoe*, 326 U.S. at 316).

### B.   This Matter Should Be Dismissed On The Grounds of Inconvenient Forum.

Assuming, *arguendo*, that jurisdiction exists over Defendants (which it does not), the matter should still be dismissed as the Southern District of New York is not the proper forum for this action. In making the inconvenient forum analysis in a diversity case, the Second Circuit requires application of the underlying state law. *Weiss v. Routh*, 149 F.2d 193, 195 (2d Cir. 1945). In any event, New York state law regarding inconvenient forum is "virtually identical" to federal law, and the seminal decisions in New York state court rely heavily on federal authorities. *See First Union Nat'l Bank v. Banque Paribas*, 135 F. Supp.2d 443, 448 n.13 (S.D.N.Y. 2001) (citing, among others, *Islamic Republic of Iran v. Pahlavi*, 62 N.Y.2d 474, 478-81 (N.Y. 1984)).

While a New York court may have jurisdiction over a matter, it is not required to maintain jurisdiction if the matter has no substantial connection with New York. *See Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 73 (N.Y. 1984). This lack of substantial connection or inconvenient forum grounds for dismissal is codified in CPLR § 327(a) which provides:

> When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action. CPLR § 327(a).

The courts, therefore, have sound discretion to dismiss an action in the interest of justice upon a finding that the action has no "substantial nexus" to New York. *Stamm v. Deloitte and Touche*, 202 A.D.2d 413 (N.Y. App. Div. 1994). Stated otherwise, CPLR § 327 and the common law doctrine of *forum non conveniens* permit a court to "dismiss such actions where it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere." *Pahlavi*, 62 N.Y.2d at 478-79.

In analyzing whether the forum is inconvenient and whether a matter should be dismissed, several factors must be considered and balanced. These factors include the "burden on the New York courts, the potential hardship to the defendant, and the unavailability of an alternative forum in which plaintiff may bring suit." *Id.* at 479. The court may also consider whether "the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction." *Id.* The application of these factors must be flexible and based upon the individual facts and circumstances of each case. *Id.*

First, this Court should not be burdened with a shareholder dispute involving non-domiciliary directors of a foreign corporation. Plaintiffs acquired stock in a Nevada company operating out of Israel, knowing both the state of incorporation and the country of operation and management. This suit, based on the New York residency of shareholders, is nothing more than an attempt to use the inconvenience of the distant venue as leverage against Defendants. Additionally, this action would burden the Court with the additional administrative burden of applying unfamiliar Nevada corporate law.

Second, Defendants would suffer great hardship having to defend this action in New York. Defendants are residents of Israel or California, both thousands of miles away from New York. SecureLogic has no employees or substantial offices within or near the State of New

York that could ease the burden of litigating in this forum.[3]  Thus, Defendants would be faced with unreasonable expense associated with defending an action in a forum which has no connection to the underlying dispute, including the transportation costs of bringing witnesses, records, and Defendants themselves from California and Israel to New York.

Third, Plaintiffs have an alternative forum to address their grievances.  If the Court grants the motion to dismiss, Plaintiffs will not be without a court in which to seek a remedy.

Finally, the cause of action in this case arises primarily in a foreign jurisdiction. This derivative action originates from allegations that the stewardship of the corporation was defective.  The cause of action is internal to a Nevada company, and thus arises under the laws of Nevada.  Nevada has a superior interest in deciding issues arising from the governance of its domestic corporations.  *See Hart v. Gen. Motors Corp.*, 129 A.D.2d 179, 185 (N.Y. App. Div. 1987) (dismissing shareholder derivative claim against Delaware corporation on grounds of *forum non conveniens*).  The domicile of shareholders is a fact without significance.  *See Bader & Bader v. Ford.*, 66 A.D.2d 642, 646 (N.Y. App. Div. 1979).  Additionally, SecureLogic's headquarters are located in Israel, and the alleged acts that give rise to the cause of action physically happened in Israel.  Accordingly, New York is not the appropriate forum for the adjudication of this dispute, and the action should be dismissed.

## C.   Plaintiffs Do Not Plead Demand Futility With Sufficient Particularity.

In the event the Court takes jurisdiction of this matter, the Complaint should be dismissed because, notwithstanding the derivative nature of Plaintiffs' claims, they have neither

---

[3] As noted above, the 40 Wall Street office that SecureLogic has used for limited purposes is the office of Plaintiff Baytree Capital Associates LLC – hardly a place that Defendants could use as a "home base" for the litigation.

made a demand on the SecureLogic Board nor pled demand futility as required by Nevada law, the state of SecureLogic's incorporation.  Both Federal Rule of Civil Procedure 23.1 and Nevada Rule of Civil Procedure 23.1 provide that a plaintiff must allege with particularity the efforts, if any, made to obtain the desired action, and the reasons for his failure to obtain the action he desires or for not making the effort.[4]  When determining the adequacy of a derivative complaint's allegations of demand futility, court must look to the law of the state of incorporation for the substantive requirements.  *See, e.g., Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-109 (1991).  Nevada has explicitly adopted Delaware's standard for demand futility.  *See Shoen v. SAC Holding Corp.*, 137 P.3d 1171 (Nev. 2006).

       1.       **Plaintiffs Do Not Satisfy the Fundamental Standards for Pleading Demand Futility.**

Under Delaware law, it is a "cardinal precept" that "that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 Del. Code § 141(a)).  Therefore, "[b]y its very nature the derivative action impinges on the managerial freedom of directors." *Id.*  Thus, Delaware's demand requirement "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Id.* at 811-12.  Because "[t]he decision to bring a lawsuit on behalf of the corporation is a decision concerning the management of the corporation and consequently the responsibility of the directors," a derivative plaintiff must meet certain additional pleading requirements to assert a valid derivative action. *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992) (citing *Levine v. Smith*, 591 A.2d

---

[4] Failure to do so renders the complaint invalid and requires dismissal of the action.  *See, e.g., In re Merck & Co., Inc. Derivative & "ERISA" Litig.*, 2006 U.S. Dist. LEXIS 79294, at *65-66 (D.N.J. May 5, 2006) (dismissing complaint with prejudice for failure to plead demand futility with particularity).  *Accord, In re Forest Labs. Inc. Derivative Litig.*, 450 F. Supp. 2d 379, 381, 396 (S.D.N.Y. 2006).

194, 200 (Del. 1991)).  To establish demand futility under Delaware law, a derivative complaint must create a reasonable doubt through particularized allegations that:  (1) a majority of the board of directors is disinterested and independent, or (2) the challenged transaction is otherwise the product of a valid exercise of business judgment.  *Aronson*, 473 A.2d at 814.

Plaintiffs have failed to plead particularized factual allegations to demonstrate that the majority of the SecureLogic Board is interested, and thus unable to fairly consider a demand, which is a fundamental prerequisite to establishing demand futility.  *In re J.P. Morgan Chase & Co.*, 906 A.2d 808, 820-821 (Del. Ch. April 29, 2005).  A director will be considered interested "whenever divided loyalties are present, or a director either has received or is entitled to receive, a personal financial benefit from the challenged transaction which is not equally shared by the stockholders." *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984).  Directorial interest may also exist "where a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders."  *Rales*, 634 A.2d at 936.

Plaintiffs have not alleged circumstances that would warrant considering an otherwise-disinterested director to be part of an interested and dependent majority of directors. Only when a director is shown to be beholden to another director who is interested is it appropriate for that director to be considered interested.  *Parnes v. Bally Entm't Corp.*, 2001 Del. Ch. LEXIS 34, at *29 (Del. Ch. Feb 23, 2001).  From the allegations in the Amended Complaint, the only potential basis for alleging dependence is that fact that the director Defendants' are employed by SecureLogic.  However, in order to establish a lack of independence as a result of a director's employment, Plaintiffs must allege with particularity that the director is "beholden" to another director (or directors) or that he is so under their influence that his discretion would be neutralized. *See Rales*, 634 A.2d at 936.  Plaintiffs have not made such a particularized showing,

meaning that, to avoid the demand requirement, they must show that each Defendant is interested as a result of his own circumstances.

In order to be considered interested, a director must have a disabling reason why he or she cannot consider a demand fairly. *Friedman v. Beningson*, 1995 Del. Ch. LEXIS 154, at *9-10 (Del. Ch. Dec. 4, 1995). Here, since Nevada insulates directors and officers from liability for most breaches of fiduciary duty, the potential liability of the director Defendants arising from Plaintiffs' allegations of breaches of fiduciary duty do not support the required demonstration of interestedness. As directors of a Nevada corporation, the SecureLogic director Defendants retain the ability to consider demand impartially, even when named as defendants in a derivative action, because of this liability protection.

Under Delaware law, corporations may exempt directors from liability for the breach of the duty of care by including a statement to that effect in their articles of incorporation. 8 Del. C. § 102(b)(7). "When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption." *In re Baxter Int'l, Inc. S'holder Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995). In one of the few areas of difference with Delaware corporate law, Nevada's legislature chose to enlarge director protection even further by statute. David Mace Roberts & Rob Pivnick, *Tale of the Corporate Tape: Delaware, Nevada and Texas*, 52 Baylor L. Rev. 45, 51 (2001). Thus, Nevada law provides:

> [A] director or officer is not individually liable to the corporation
> or its stockholders or creditors for any damages as a result of any

act or failure to act in his capacity as a director or officer unless it
is proven that:[5]

(a) His act or failure to act constituted a breach of his fiduciary
duties as a director or officer; and

(b) His breach of those duties involved intentional misconduct,
fraud or a knowing violation of law.  Nev. Rev. Stat. § 78.138(7).

In other words, a director or officer is not liable for any breach of fiduciary duty

unless the breach involved intentional misconduct, fraud, or knowing violation of the law.  *See*

*Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1184 (Nev. 2006) (applying Nev. Rev. Stat. §

78.138(7) to the duty of loyalty).  Due to this statutory Nevada immunity, Plaintiffs must plead

intentional misconduct, fraud, or knowing violation of the law with particularity to establish a

substantial likelihood the defendants would be liable, and thus unable to consider the demand

fairly.

The second branch of *Aronson* focuses on whether the decision of a board in favor

of a challenged transaction was a product of business judgment.  473 A.2d at 814.  Notably,

when the charge is a claim for corporate waste, "plaintiffs have the burden of demonstrating by

particularized allegations that the [the challenged transaction] is so devoid of a legitimate

corporate purpose as to be a waste of assets."  *Pogostin v. Rice*, 480 A.2d 619, 626 (Del. 1984).

Where a plaintiff does not challenge a board decision or transaction, but rather

seeks to prevent the board from even considering an issue, only the first prong of the *Aronson*

test is applicable.  *See, e.g., Forest Labs.*, 450 F. Supp.2d at 388.  Accordingly, in those

circumstances, plaintiffs must plead particularized factual allegations to "create a reasonable

doubt that . . . the board of directors could have properly exercised its independent and

---

[5] There are seven enumerated exceptions to this provision.  None are applicable here.

disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927,

934 (Del. 1993).

In sum, to clear the procedural hurdle of Rule 23.1, and successfully plead

demand futility, a plaintiff must plead with particularity that a majority of the board of directors

was not disinterested in a consummated transaction, or will not be disinterested in a proposed

transaction. To show that a director or officer of a Nevada corporation was interested in a

transaction, a plaintiff must plead with particularity that the defendant (1) engaged in intentional

misconduct, fraud, or knowing violation of the law, (2) for a personal financial benefit or to

avoid a material detriment, (3) in a decision made by a similarly interested or beholden majority

of the corporation's board of directors. Alternatively, in the case of a consummated transaction,

a plaintiff must plead particularized facts to show that the transaction did not result from the

exercise of business judgment, which, under Nevada law, means that it was the product of

intentional misconduct, fraud, or the knowing violation of the law. When a plaintiff's allegations

amount a claim for waste of corporate assets, the plaintiff must also show why the transaction is

devoid of a legitimate corporate purpose.

### 2.    Plaintiffs Do Not Support Their Claims with the Required Particularity.

Here, as a preliminary matter, the Amended Complaint does not plead sufficient

facts to support a finding that any Defendant was beholden to another Defendant.[6] While the

Amended Complaint (incorrectly) outlines the employment relationships among the Defendants,

it does not contain any allegations that any subordinate director would be beholden or have their

discretion neutralized by another director. "Directors do not necessarily lose their ability to

---

[6] Defendant Gross is not a director of SecureLogic, and thus is not included in this analysis.

exercise independent business judgment merely by virtue of their being officers of [the corporation] or [the corporation's] subsidiaries." *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 357 (Del. Ch. 1998).  Additionally, Plaintiffs have not alleged sufficient particularized facts that Defendant Flynn, an independent consultant, is beholden to any another director based upon a business relationship.  Indeed, a consultancy relationship does not automatically make a director beholden, thus rendering insufficient the simple allegation that Defendant Flynn "has been a retained consultant to SecureLogic."  (Am. Compl. ¶ 25).  *See White v. Panic*, 793 A.2d 356, 366 (Del. Ch. 2000) (finding legal fees and consulting fees not sufficient to establish reasonable doubt as to directors independence where allegations of materiality of the fees was lacking in the complaint).

The Amended Complaint contains nine claims that Defendants breached their fiduciary duties to SecureLogic.[7]  The demand futility analysis is conducted on a claim-by-claim basis.  *Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003).  None of these claims has been pled with the required particularity, as each one fails at least one of the legal standards outlined above.  Each of the nine claims is discussed separately below.

Plaintiffs have failed to allege with the required particularity facts sufficient to establish demand futility with respect to their claim that Defendants did not adhere to board resolutions.  (Am. Compl. ¶¶ 63-64)**.**  Initially, this claim makes no sense.  If officers or

---

[7] The claims are:  (1) failing to adhere to board resolutions and (2) granting themselves excessive compensation and benefits; (3) continuing a detrimental relationship with a company called Pardigma, (4) failing to apprise shareholders of negative tax implications of a proposed merger with Logistics Advanced Systems, (5) expanding the board of directors, (6) creating and empowering an Executive Committee of the Board of Directors, (7) allowing SecureLogic's authorization to do business in the state of Nevada to lapse, (8) attempting to deregister SecureLogic with the SEC, and (9) indemnifying defendants in this action and in a parallel suit by Treeline Investment Partners and David Jaroslawicz against Gary Koren and his wife.  (Am. Compl. ¶¶ 36-58).

employees of SecureLogic failed to follow directives of the Board of Directors, then the appropriate course is disciplinary action by the Board of Directors.  In any event, the Amended Complaint contains no allegations that this alleged failure benefited Defendants financially or shielded them from liability.  Additionally, since Plaintiffs do not allege that this purported action constitutes intentional misconduct, fraud or knowing violation of the law, Defendants cannot be found personally liable for any potential breach of duty under applicable Nevada law and, thus, could have considered the demand fairly.  *See Shoen*, 137 P.3d at 1184.

Plaintiffs have not alleged with sufficient particularity that a majority of SecureLogic's board was beholden to each other such that they could not have considered fairly a demand regarding the granting of allegedly excessive compensation, benefits, and travel expenses.  Furthermore, boards of directors are given a wide amount of discretion to set salaries. If "the services of a particular individual warrant large amounts of money, whether in the form of current salary or severance provisions, the board has made a business judgment." *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del. 1996).  Plaintiffs' mere recitation of average Israeli officer salaries fails to take into account the experience, skill, and demand for Defendants' services. (Am. Compl. ¶¶ 44-46).  Additionally, Plaintiffs have not pled that Defendants engaged in intentional misconduct, fraud, or knowing violation of the law regarding the setting of officer compensation.  *See Shoen*, 137 P.3d at 1184.

Plaintiffs have not pled with the required particularity facts sufficient to establish demand futility with respect to their claim that SecureLogic maintained a detrimental relationship with Paradigma.  The Amended Complaint contains two mentions of Paradigma. Plaintiffs allege that SecureLogic "maintained affiliations . . . at the expense of SecureLogic solely to benefit Defendant Koren" and that "Defendant Koren receives compensation from

Paradigma and he has ensured the affiliate has not repaid $80,000 cash owed to the cash-strapped SecureLogic." (Am. Compl. ¶¶ 36, 43). Plaintiffs have not explained the factual details of the debt, made no allegations regarding any potential delinquencies or deficiencies in repayment, nor detailed how Koren personally benefits from this relationship. Furthermore, Plaintiffs have not sufficiently alleged that a majority of SecureLogic's board was beholden to Koren such that they could not consider a demand fairly with respect to this claim. In addition, in order to show a lack of business judgment under *Pogostin*, Plaintiffs are required to plead that the Paradigma relationship was so devoid of a legitimate corporate purpose as to be a waste of corporate assets. *See Pogostin*, 480 A.2d 619. Accordingly, Plaintiffs have not pled sufficient facts that SecureLogic's dealings with Paradigma were not a valid exercise of business judgment.

Plaintiffs have not alleged with the requisite particularity facts sufficient to establish demand futility with respect to their claim that Defendants failed to apprise shareholders of negative tax implications of a proposed merger with Logistics Advanced Systems. (Am. Compl. ¶ 50). Most importantly, the merger in question was never consummated. (*Id*.) No shareholder, director, or employee of SecureLogic benefited or avoided a detriment either collectively or individually from the tax implications of the merger because the merger never happened. Additionally, other than a conclusory allegation that Defendant Koren's alleged failure to disclose this information amounted to fraud (*Id*.) – an allegation that is insufficient under Fed. R. Civ. P. 9(b) – Plaintiffs have not pled that Defendants purported failure to warn shareholders (of something that never occurred) is the product of intentional misconduct, fraud, or knowing violation of the law. *See Shoen*, 137 P.3d at 1184. Nor have Plaintiffs shown why the other directors could not now consider a demand with respect to this alleged non-disclosure.

Plaintiffs have not pled with the required particularity facts sufficient to establish demand futility with respect to their claim that the SecureLogic Board of Directors improperly expanded the number of directors serving on the Board.  (Am. Compl. ¶ 51).  Plaintiffs' claim that the November 9, 2006 expansion of the board of directors was "improper," effectuated through an "unlawful resolution," and "consolidated power and control of the Company to the detriment of minority shareholders."  (*Id.*).  Plaintiffs have provided no details as to why the expansion was improper or inconsistent with Nevada law, or how it created a detriment to minority shareholders, let alone that it was the product of intentional misconduct, fraud, or knowing violation of the law.  Furthermore, expansion of the Board of Directors, even if improper, conferred no financial benefit on or avoided detriment to any of the Defendants.  Any actions taken by the new board would have to meet the same standards as the old board, and any conduct actionable by the old board would be just as actionable if undertaken by the new board. There is no allegation that the mere fact of resizing of the board somehow affects Plaintiffs' rights or remedies against the board in any manner.  Plaintiffs' conclusory allegations that the expansion of the board was to the detriment of the rights of the minority shareholders does not provide the particularity required to support their contention that the decision was not a valid exercise of business judgment or that demand is excused.

The same pleading deficiencies that prevent Plaintiffs from claiming demand futility with respect to their claim relating to the expansion of the SecureLogic Board of Directors also doom their claim that the SecureLogic Board of Directors improperly created and empowered an Executive Committee of the Board of Directors.  (Am. Compl. ¶ 51).  Thus, Plaintiffs have alleged no particularized facts to explain how or why the Executive Committee was improper or unlawful under Nevada law, or how it created a detriment to minority

shareholders, how its creation conferred any financial benefit on or avoided detriment to any of the Defendants, or that it was the product of intentional misconduct, fraud or a knowing violation of the law.

Plaintiffs have not pled with the required particularity facts sufficient to establish demand futility with respect to their claim that Plaintiffs or the company were harmed by the alleged actions of Defendants to allow SecureLogic's authorization to do business in the state of Nevada to lapse.  (Am. Compl. ¶ 52).  Plaintiffs have not pled that Defendants purported failure was the product of intentional misconduct, fraud, or knowing violation of the law.  *See Shoen*, 137 P.3d at 1184.  Moreover, the Amended Complaint contains no allegations that allowing SecureLogic's authorization to do business to lapse affected Defendants in any way differently from the shareholders of SecureLogic.

Plaintiffs have not alleged with the required particularity facts sufficient to establish demand futility with respect to their claim that the SecureLogic Board of Directors has improperly proposed to consider the deregistration of SecureLogic with the SEC.  (Am. Compl. ¶¶ 56-57).  As this act has not happened yet, only the first prong of the *Aronson* test for interestedness is applicable to the analysis here.  While the Amended Complaint contains several allegations as to how deregistration may purportedly harm shareholders, none of these allegations explain how deregistration confers a personal financial benefit or avoids a materially detrimental result to any Defendant.  In fact the only allegation that might apply to Defendants is the last:  "Eliminate oversight of corporate activities by eliminating reporting requirements to the Securities and Exchange Commission."  (Am.Compl. ¶ 57(e)).  This allegation falls well short. In the first place, the SEC does not provide "oversight" of the day-to-day activities of a registered corporation.  Rather, registered companies are required to file periodic reports that

provide information to the investing public.  Moreover, Plaintiffs fail to explain how eliminating the requirement to file SEC reports will confer a financial benefit or avoid a materially detrimental result to Defendants.

Plaintiffs have not pled with the required particularity facts sufficient to establish demand futility with respect to their claim that the SecureLogic Board of Directors has wrongfully indemnified Defendants.  (Am. Compl. ¶¶ 36, 53).  Because directors are entitled to indemnification by Nevada statute, Plaintiffs must plead facts that Defendants actions were outside the scope of their authority under Nevada law in order to establish that Defendants would not be able to consider a demand fairly.  Plaintiffs merely make a conclusory allegation that Defendants are not entitled to indemnification under NRS 78.7502(2), without pleading any facts establishing that Defendants are not immune under NRS 78.138 or any facts showing Defendants did not act in good faith or in the best interests of the corporation.  To show a lack of business judgment under *Pogostin*, Plaintiffs are required to plead that the indemnification was so devoid of a legitimate corporate purpose as to be a waste of corporate assets.  *Pogostin*, 480 A.2d 619. Finally, Plaintiffs have not pled that the SecureLogic's indemnification decision is the product of intentional misconduct, fraud, or knowing violation of the law.  *See Shoen*, 137 P.3d at 1184.

In sum, Plaintiffs have not satisfied the *Aronson* test for pleading demand futility in any of their claims against Defendants.  Accordingly, the Amended Complaint should be dismissed with prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their motion and dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction or on inconvenient forum grounds.  In the event the Court exercises jurisdiction, then Defendants respectfully request that the Court dismiss the Amended Complaint for failure to plead demand futility.

Dated:  March 23, 2007                              **PEPPER HAMILTON LLP**


By: */s/ Thomas E. Zemaitis*
Thomas E. Zemaitis (TZ 7168)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
Ph.     (215) 981-4361
Fax     (215) 981-4750


-- and --

420 Lexington Avenue, Suite 2320
New York, NY  10170-2399
Ph.     (212) 808-2700
Fax     (212) 286-9806

Attorneys for Defendants
Gary Koren, Shalom Dolev,
Cathal L. Flynn, Iftach Yeffet,
Tony Gross, and Michael Klein